The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Please be seated. Before we start, Stacy, can you come up for a second? All right, our first case is United States v. Dominguez. Ms. Powell. Thank you. Good morning, and may it please the Court. I'm Sarah Powell, CJA appointed counsel for defendant appellant Javier Chavez Dominguez. Mr. Dominguez respectfully asks this Court to reverse the district court's judgment. For the first point, the government's own evidence shows that the 2015 removal that was the basis of the unlawful reentry charge under 8 U.S.C. section 1326 was invalid. The government's own evidence establishes this. The factual basis made two claims that cannot both be true. It said that in December 2014, Mr. Dominguez was encountered at the border at a port of entry. And then it said that he was determined to be, quote, unlawfully present later. These two things under the complex and expansive web of immigration laws cannot both be true. Am I correct, Mr. Dominguez pled guilty to the current charge? Yes. And there was no objection to any part of the PSR? That's correct. Okay. So at that point when he was at the border, immigration officials were required to do one thing, inspect any applicant for admission and determine whether or not they could be allowed to enter. You agree we're here on all this on plain error? On the? On the issues you raised, none of them were raised in the district court. So I'm assuming we're here on plain error. Yes, sir. Yes, Your Honor. So they were required to inspect him and make a determination whether or not he would be admissible. That didn't happen. He was never legally present in the United States. Instead, officials based- So assuming there was error and that it was plain, how did any error affect appellant's substantial rights? The error about the removal being invalid, that's the basis of the conviction for the unlawful reentry charge. It is the very core. If he was not removed while a valid order of removal was outstanding, then the conviction is invalid. It also goes to his sentence since he faced the- That's what I was going to ask about next. What about the sentencing? Well, that's kind of a separate issue as well. But also plain error review. Yes, that's correct. Under Molina-Martinez and Rosales-Morales, any amount of extra time that is incorrectly given to a defendant's sentence is, in the ordinary case, enough to satisfy the last two prongs of Alano and Molina-Martinez and Rosales-Morales. So instead of being inspected and admitted into the United States, he was grabbed by border officials, detained, seized without a warrant, taken into the United States, brought into without being admitted- Nobody's ever contested this before in any of the prior convictions or this one. So it strikes me that this is essentially a collateral attack, which on this sentence and the prior sentences, which ordinarily I would look for in a 2255 or something like that, but here we have it on the direct appeal. I was under the impression when you pled guilty and agreed to the stipulated facts that that was a bar. That is ordinarily correct, Your Honor. However, under 1326D, it expressly allows, as due process requires, a collateral challenge in a direct appeal when it's a criminal conviction for unlawful reentry. If the requirements of 1326D are met, and we believe that we have met those, as we argued, that is, when a prior removal is the subject of a criminal conviction, due process requires that the defendant be allowed to challenge that removal. It is an element of the criminal offense. And so that is why it's, under plain error review, properly raised in the direct appeal. He was taken into the border, brought into the United States without being admitted. The government here doesn't even mention that he arrived at a port of entry, muddying the waters even further because that's the key. He was never legally present in the United States. And so he could not have been removed after. In December 2014, when he was an applicant for admission at the border, the only grounds from the record that would be admissible would be having a lack of proper documents. And that requires expedited immediate removal without any proceedings. The only other thing the border agents could have done was initiate removal proceedings under 1229A. So there were two choices they could have done. They had no authority to grab him, bring him into the United States without admission or parole, and hand him over to state law enforcement. So under 1326D, his challenge to the validity of that removal is valid. The immigration officers were absolutely wholly unauthorized. They are not authorized. They're only authorized to serve and execute federal warrants for federal crimes. They are not authorized to give custody over of an applicant who has not been admitted into the United States over to state law enforcement. They're not allowed to seize and detain without a warrant. So there were violations of due process, the Fourth Amendment, and too many immigration statutes and regulations to count. Dominguez meets the three requirements under 1326D to challenge that removal order here. In fact, what the officers did, the actions described by the government in its factual basis, amounted to the crimes of bringing in and harboring an alien under 1324A, 1A Sections 2, 4, 5, and A2 that would carry prison sentences of between five and ten years. So a violation of due process, which is the third prong of 1326D, has been established. And so the removal was fundamentally unfair. When an immigrant is removed in an expedited process, like the record suggests, and the government has never disputed that point, then the first two prongs of 1326D are also met under this Court's precedent and the Ninth Circuit, which governed the immigration officials at the time. So under 1326D, the three prongs are exhausting the administrative remedies, the first. The second is a lack of opportunity for judicial review. As I said, this Court and the Ninth Circuit that governed immigration officials in Arizona have held that when the removal proceeding is expedited, those two prongs are met. And so the last prong, that the proceedings were fundamentally unfair, this Court is required showing that there was a violation of due process and that he was prejudiced. And so in our briefing in here, we've shown violations of due process in the Ninth Circuit again, where they govern these immigration officials. The violation of due process is met when Border Patrol or other agencies refuse to follow their regulations. When compliance with the regulation is mandated by the Constitution, prejudice may be presumed. The regulations and statutes that these officers failed to follow were in part there to protect the Fourth Amendment rights and the other statutory and constitutional rights of those entering the United States. When he presented at the border in December 2014, he was 21 years old. He had only ever been removed from the United States once when he was 18 years old, and it was a voluntary departure. So his record, as it were, as an immigrant was very, very good. He had grown up here. He was brought here by his mother when he was 12. And so at that point in 2015, when border guards encountered him at the port of entry, they would have had no reason to criminally charge him. There was no crime that had been committed. He was not unlawfully present in the United States. He only had that one voluntary departure when he was 18. He had no criminal record. And so inferring based on the record that we have and immigration statutes, border guards were supposed to inspect him. If he didn't have the right papers, remove him immediately. If they weren't sure about whether or not he was admissible, they were required to place him in formal removal proceedings under 1229A, and those two things were the only things that the border immigration officers were authorized to do. They were not authorized to seize him, bring him into the country without being admitted, and admitted is a technical term in immigration law. It means the lawful entry of a person after inspection required by 1225 and a determination by officials of admissibility. That did not happen at all. So he was brought into the country by immigration, handed over to state law enforcement. He was charged with a small drug crime as a first-time offender, and then he was served six months, released on three years' parole. Immigration was waiting. Now he was in a fundamentally different place. He had a criminal conviction that they, the government, had erroneously called an aggravated felony. Now he'd served time in prison. He had a criminal record. And so that kind of prejudice from the unlawful actions of the immigration officials is also another reason to find that under 1326D that this removal was invalid. I welcome the court's questions. Can you explain why you believe that the Arizona felony was improperly categorized? The possession for sale of a narcotic drug is not categorically an aggravated felony because it contains drugs on the state federal schedule that are not on the federal schedule. And the definition of aggravated felony, as examined by Malou Lee v. Lynch and Moncrief v. Holder and other cases, requires that the drug be, since the language of the statute expressly says under the CSA and then it gives the 802 section with the definitions of those drugs. And so this court and Malou Lee v. Lynch and the Supreme Court and the Ninth Circuit have also held that if a state drug schedule contains drugs that are not on the federal list, then it's categorically overbroad. Now, if it's divisible, of course, the government could have presented Shepard approved documents. It did not. And so this court presumes that the categorical approach applies. We submitted and this court granted the Shepard documents that were available from that case showing that he was not convicted of an aggravated felon. There was no drug listed. It was simply the basic statutory language. There's no particular drug, so it can't be determined that it was not the ones that are not on the federal schedule. And if we agreed with you on that point, what would be the appropriate remedy? That he was not convicted of an aggravated felony. Then remand for resentencing in accordance with this court's decision. Thank you very much. You've got some rebuttal time. Ms. Niemeyer, we'll hear from you. Good morning and may it please the court. Julie Niemeyer for the United States. Addressing very briefly the bulk of my friend's argument on the issue of the removals. That issue could have been litigated below if the defendant had filed a motion to dismiss under 1326D. The defendant chose not to do so and instead he pleaded guilty. That issue is waived. As to the sentence, there's three arguments why this court should affirm the sentence. And I'd like to outline each one very briefly and then I'll go into each one in greater depth. The first one is prejudice. The defendant has not shown actual effect on his substantial rights. Because the sentence here was imposed independent of any alleged error. And we have no precedent in this circuit supporting a presumption of prejudice. Where the guidelines were unaffected by that error. The second argument is error. This is plain error review. And the defendant hasn't shown that the district court erred in applying that 20-year maximum. The district court did not err by relying on the PSR. Which reflected that it had used Shepard-approved sources to find that the defendant had an aggravated felony on his record. And even looking at the Shepard documents supplied by my friend on appeal. Those documents also confirm a finding that the defendant committed an aggravated felony. And then finally, even if this court were to find error, that error is not clear or obvious. This is not a matter of well-settled law. Certainly not in this circuit. And not even in the Ninth Circuit. So let's start with the prejudice argument here. The fact of the matter is this sentence of 48 months was not affected at all by the 20-year statutory maximum. The PSR reflected that it was an aggravated felony. The 20-year maximum applied. The defendant didn't object to that PSR. The defendant didn't object to any of the materials that were summarized in the PSR. And if we look at that actual summary on page JA 120 and 121, we see where that is reflected. That issue was not raised at sentencing at all. The government didn't talk about it. Defense counsel didn't talk about it. The district court didn't talk about it. What was discussed at sentencing were the 3553A factors. And that's what led the district court to sue Sponte, impose a variance. Government hadn't asked for a variance. The court found that a variance was appropriate under these facts and under the 3553A factors. So that's where the court arrived at the 48-month sentence. It had nothing to do with the statutory maximum. And even if my friend was correct about the statutory maximum being incorrect, even if there was a 10-year statutory maximum, even that wouldn't have had any effect on the district court's reasoning as to why a variance to 48 months was appropriate here. So we don't have any actual prejudice. Can we then simply presume prejudice because there was allegedly a statutory sentencing error? And I don't think we can. I don't think there's any authority from this circuit saying that we should presume prejudice from a statutory error where that's not also tied into the guidelines range. Here the guidelines range was correct. So it's just this sort of argument regarding the prejudice. He just can't make that showing. And this is plain error review. So that's the end of that issue right there. Even if this court were to disagree, the defendant hasn't established error. So here, going back to the PSR, JA 120 and 121, it clearly summarizes that conviction as, the defendant pled guilty and was represented by counsel on September 26, 2012. The defendant possessed heroin for sale. That's the summary. And we know that the court properly relied on that summary because that shows earmarks of being derived from Shepard-approved sources. And that's the standard in this circuit. The court was entitled to rely on facts in the PSR that showed they were from a Shepard source. Those facts are the facts of the conviction. They're not facts about the conviction. They're the facts of the conviction. And the court properly relied on them. Even if this court were to examine in detail the Shepard documents presented by my friend, the court would reach the same conclusion because those documents further establish that this was, in fact, an aggravated felony. When the defendant pled guilty to this complaint, he pled guilty to count one. Count one charges that the defendant, on or about the 26th day of September, 2012, knowingly possessed for sale heroin, a narcotic drug. That's the count that the defendant pled guilty to. Now, he did not plead guilty to the amount of that drug. That doesn't matter. That doesn't matter. And we know that doesn't matter because the Ninth Circuit already looked at this question. They examined the statute. And they concluded that the statute, because it was divisible in that particular case, as long as the Shepard documents show that the drug that the defendant was convicted of was on the federal list, then it counts. And the defendant hasn't established any argument for why that is not a persuasive reasoning. So he pled to that count. It reflects heroin. Heroin is on the federal list. It's an aggravated felony. Finally, even if the court disagreed as to that point, any debate about how to classify a conviction under that statute is not a matter of well-settled law. This has been addressed by the Ninth Circuit. It has not been addressed by this circuit, of course. But even in the Ninth Circuit, the case there established that that particular defendant's conviction was for a federal substance, just as it was here. That type of analysis hasn't been conducted in this circuit. That's a persuasive case. But it certainly could be up for debate. There are arguments made by my friend as to how it could be classified otherwise. But this is not a matter of well-settled law. So are you suggesting that the Arizona statute does not fail the categorical approach? Your Honor, I agree with the defendant that it is an overbroad statute. And so you agree that it fails the categorical approach? Yes, Your Honor. But under the modified categorical approach, because it's a divisible statute, that permits the court to look to see if the conviction was for... Only if they're Shepard documents, right? Yes, Your Honor. Absolutely, Your Honor. And were they here?  Did the government produce Shepard documents here? It did not, Your Honor, because the defendant didn't object to the information in the PSR. But didn't the government have to produce Shepard documents if the court was to apply the modified categorical approach? Your Honor, I would say no, because the PSR summarized the Shepard documents, and the court was entitled... But you just said there were no Shepard documents. They were not physically introduced in the district court. That's what I was referring to, Your Honor. So how do we know that they were relied upon in the PSR? That's the job of the probation office, to use the Shepard documents to represent what a conviction is, and the very description of the conviction in the PSR bears earmarks of having come from Shepard documents. The first sentence says the judgment reflects, goes on to state that, and the second sentence gives the date and the offense, which reflects that it came from a charging document. Once he pleads guilty to that offense, that charging document becomes a Shepard document. So this court in Thompson, and again in Boynkin, looked at that question and said, as long as the district court relied on what appears to be a Shepard document summarized in the PSR, there's no error, because the district court is entitled to rely on that information if it appears to be from a Shepard document. In Boynkin, we actually found the opposite, that there was no indication that there had been reliance on Shepard documents. In that case, yes. The facts that were examined in that case showed that there wasn't any earmark of that information having come from a Shepard document. And how do the facts here differ? Because here, the summary is of the judgment, and then only in the third sentence of that paragraph does the probation officer say the probable cause statement reflects, da-da-da-da-da. That's not a Shepard document. We don't need to rely on that information. The court didn't need to look at that information to make the appropriate determination that this was a trafficking offense. Now, that information could be relied on under 3553A, because the defendant didn't object to it. But only the first two sentences were necessary for the court to determine that that was an aggravated felony. And that's allowed. In Boynkin, there was no indication that the facts summarized in the PSR came from Shepard documents. So that's the difference here. And I think it's also important to note that the court's authority to look at the fact of a prior conviction, as summarized by Almendarez-Torres, was not overruled by Erlinger. Erlinger actually affirmed that it was not going to disturb the Almendarez-Torres exception. It wasn't asked to do so, and it wasn't going to do so. The Almendarez-Torres exception still applies. And that exception permits the district court to find the fact of a prior conviction based on the Shepard documents. And that's what happened here. Well, you just said there were no Shepard documents. So how do we know that happened? I'm sorry, based on the summary of the Shepard documents, which appears in the PSR. Well, you assume that they were summarized. There's no reference to them in the PSR. Correct, Your Honor. It's the common practice of the probation office to summarize what they glean from those documents and to present it, which they identified in the first sentence. At first, they were looking at the judgment. And then the second sentence, as I've suggested, reflects that that information came from a charging document because it gives the date and the exact offense. I'm happy to entertain any other questions of the court as to the other issues. Thank you very much. Thank you, Your Honor. Ms. Powell, you've got some rebuttal time. Thank you, Your Honors. To hit the points that the government brought up, first, 1326D does not require the challenge to be raised in the district court. In fact, the very purpose of it is to allow challenges in appeals and collateral challenges. So the fact that it wasn't raised, as counsel established, means plain error applies. But that is all that her point establishes. Second, we disagree that the PSR reflects that the information was taken from Shepard-approved documents. Again, I'd like to stress they did not present any in the district court. But the ones that we have actually in this court is granted. I agree with my co-counsel. What do you think the probation officer was summarizing in the PSR? Yes, I have the page. I do agree with the government that the first sentence says the judgment reflects. I believe the first sentence, similar to what was discussed in this court's decision in Vann. That indicates that the probation officer was looking at those documents. That they looked at the judgment reflects that the defendant pleaded guilty and was represented by counsel. Those are the only pieces of information that under Vann and other cases in this court that would be considered to come from Shepard-approved documents. On that point, he was not charged in Arizona court by an indictment. The charging document, as DeCamp and Shepard recognized, must be looked at with what he pleaded guilty to, any transcripts of the guilty plea, anything contained in the judgment. One, the direct complaint that he was charged with was based on the sworn testimony of a law enforcement officer. That's not a Shepard-approved document. Two, the document itself, the guilty plea, I'm looking at the motion, the guilty plea page two says, paragraph four, this agreement serves to amend the complaint, indictment or information, to charge the offense to which the defendant pleads. So it's not correct to say that he pleaded guilty to that charge. Going back to Judge Agee's initial question, none of this was argued below, was it? That's correct. Plain error applies. Again, under . . . At best, maybe waiver. Waiver is the intentional relinquishment of a known right. It's not clear that anybody knew the correct law or, you know, that's . . . So the Shepard documents that we do have modify the direct complaint. They contain no mention of black tar, heroin, et cetera, that's in the PSR. And so I disagree with the government that says that the rest of this can be accepted as taken from Shepard-approved documents. So . . . One moment. So it was incorrect to rely on the PSR. Going to the consequences of . . . This court and the Supreme Court have often noted that when a statute raises a person's statutory maximum ten years, that is significant. So even if he received a different sentence, the variance of 48 months or such, the significance is being labeled an aggravated felon that has immigration and state and federal criminal consequences in the future that are dramatic and certain, since his family is here and there may be problems in the future. And now being labeled an aggravated felon also harms him as a legal state, the status. There is . . . this was plain error. We've known the statutes of Arizona and the federal schedules, you know, since they were enacted. The Arizona statutes were enacted, these relevant schedules, I believe in 1996. We've known since 1990 that under Taylor there's a categorical approach, and you look at the statutes and you compare the statutes and you see if they're overbroad. So this was not a plain error. The analysis has been long settled, as well as the modified categorical approach and what that must inquire. Malouli v. Lynch . . . So what else have you got to tell us this morning? Me? Yes, ma'am. Because your time has expired. Is there anything else you wanted to tell us?  No, I just wanted to rebut the statements of the government. I wanted to emphasize that he has met the prongs under 1326D to challenge the removal order in this proceeding under plain error and that immigration officials unlawfully brought him into the country. He had not been admitted. He had not been paroled. They turned him over to state law enforcement where it resulted in criminal conviction on his record. He was never legally present in the United States. He could not have been removed pursuant to a valid warrant of removal that was outstanding. Thank you very much. All right. Thank you, counsel. We note, Ms. Powell, that you're court-appointed and the court wants to express its appreciation to you for undertaking representation in this case. So we'll come down and greet counsel and then move on to our next case. Thank you.
judges: G. Steven Agee, Stephanie D. Thacker, Nicole G. Berner